UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | } | CASE NO. 18-62934-JWC |
| | } | |
| JACOB BENJAMIN DUMAS | } | CHAPTER 13 |
| | } | |
| Debtor. | } | CONTESTED MATTER |

**DEBTOR'S BRIEF IN SUPPORT OF CONFIRMATION OF CHAPTER 13 PLAN**

COMES NOW, **JACOB BENJAMIN DUMAS**, Debtor in the above styled case, and through counsel files this "Debtor's Brief in Support of Confirmation of Chapter 13 Plan," showing to this Honorable Court the following:

### I.  Statement of Jurisdiction

This Court has jurisdiction in this contested matter pursuant to 28 U.S.C. Section 1334; 28 U.S.C. Section 151 *et seq.*; and, 11 U.S.C. Section 101 *et seq.*  Venue is appropriate under 28 U.S.C. Section 1409.  This matter is a core proceeding as defined in 28 U.S.C. Section 157(b)(2)(L).  This matter is a contested matter as provided under Rule 9014 F.R. Bankr. P.

### II.  Statement of the Case

This is a Chapter 13 case which was initiated by the filing of Debtor's voluntary petition on August 8, 2018.  This case is subject to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Debtor's 341 Meeting of Creditors was held on September 13, 2018.  The Standing Chapter 13 Trustee ("Trustee") filed several objections, all but one of which were

resolved prior to the reset confirmation hearing on March 12, 2019. At the hearing on confirmation of Debtor's proposed Chapter 13 plan, this Court heard argument on the Trustee's sole remaining objection, which states "Official Form 122C-2 reflects an amount for line item (35) that appears to be incorrect. 11 U.S.C. Section 1325(b)(2) and 11 U.S.C. Section 1325(b)(3)." After hearing argument from counsel for the Chapter 13 Trustee and counsel for Debtor, the Court directed the parties to present briefs on the remaining issue of whether the Debtor's plan conforms to the requirements of 11 U.S.C. Section 1325(b)(1)(B) by paying all of the Debtor's projected disposable income to the unsecured creditors during the Applicable Commitment Period of his plan.

### III. Statement of the Issue

Does the Debtor's plan provide a dividend to non-priority unsecured creditors sufficient to satisfy the requirement of 11 U.S.C. Section 1325(b)(1)(B) that the debtor contribute to the plan "all of the debtor's projected disposable income to be received in the applicable commitment period?"

### IV. Statement of the Facts

Debtor filed this case on August 4, 2018. Along with the petition, schedules, and Chapter 13 plan, Debtor filed his Official Form 122C, "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," pursuant to Bankruptcy Rule 1007(b)(6). Form 122C discloses that Debtor's annualized current monthly income for the 6-month period preceding the filing of the case is $71,184, which exceeds the median income for Debtor's household size of one. As a result, Debtor is "over-median," and his Applicable Commitment

Period ("ACP") is 60 months (§1325(b)(4)(A)(ii)), and his disposable monthly income must be determined according to the formula in §1325(b)(3).

From Debtor's Current Monthly Income, determined on Form 122C-1, Debtor deducts on Form 122C-2 various allowable expenses. Lines 6 through 10 of the form are basic deductions for living expenses, provided by IRS Local Standard based on the Debtor's household size. Debtor further deducts the operation and ownership costs of his vehicle (Lines 12 and 13, respectively), income tax withholdings and health insurance premiums (Lines 16 and 25, respectively), and various other deductions that are specific to the Debtor. On Line 35, Debtor's Form 122C-2 reflects a deduction of $7,651, which represents $3,151 of priority tax debt owed by Debtor and $4,500 in fees to be paid to Debtor's attorney for representation in the Chapter 13 case.

The purpose of Form 122C is to derive the Debtor's Disposable Monthly Income ("DMI"), reflected on the form at Line 45. The result of Debtor's filed Form 122C is DMI of $639.49. This amount, multiplied by the ACP of 60, produces the minimum "pool" of unsecured debt that Debtor must propose to pay in order to present a plan that satisfies Section 1325(b)(1)(B). Here the Debtor's plan proposes in section 5.1 to pay 60 x $639.49, or $38,369.40.

## V. Argument

The Chapter 13 Trustee objects on the basis that the Debtor's plan does not satisfy the requirement of 11 U.S.C. § 1325(b)(1), which provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
> (A)    The value of the property to be distributed under the play on account of such claim is not less than the amount of such claim; or
> (B)    The plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date

> that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Because Debtor's plan does not provide for a 100% dividend to unsecured creditors under subparagraph (A) above, it must satisfy the alternative requirement in subparagraph (B). The Trustee objects on the basis that Debtor is not proposing to pay in all of his disposable income. Specifically, the Trustee argues that Debtor should not have claimed a deduction under line 35 for the fees to be paid to Debtor's attorney in the Chapter 13 plan. The sufficiency of Debtor's plan, therefore, turns on the question of whether a debtor's disposable income is calculated by first deducting the amount to be paid to debtor's attorney.

Section 1325(b)(2) provides that the formula for determining DMI is the current monthly income of the debtor, less amounts "reasonably necessary to be expended for the maintenance or support of the debtor." 1325(b)(2)(A)(i). Among other allowable deductions, section 1325(b)(3) defines amounts reasonably necessary to be expended, in part by reference to §707(b)(2). 11 U.S.C. 1325(b)(3). Section 707(b)(2)(a)(iv) provides a deduction for "expenses for payment of all priority claims" as the total of priority claims divided by 60. This section is the statutory basis for Debtor's deduction on line 35 of form 122C.

Debtor contends, and the cases discussed herein bear out, that there are two theories under which a debtor may reduce the amount paid to non-priority unsecured creditors by the amount paid to debtor's attorney's fees. The first theory is that debtor's attorney's fees are deductible on Line 35 of Official Form 122C—this is the "above the line" theory in that it takes the deduction in order to determine the DMI amount which is to be distributed to non-priority unsecured creditors. This is Debtor's position in the instant case, and the position the Debtor urges this court to adopt. The second, alternative theory is the "below the line" theory, in which Debtor calculates his DMI without a deduction for his attorney fees, and then reduces the resulting "pool" to non-priority

unsecured creditors by the amount of his attorney fees.  Debtor's position is that these are alternative theories, and as will be shown, courts have repeatedly rejected plans that propose to take the deductions both above *and* below the line.

**Above-the-Line: Debtor's attorney's fees are priority claims which should be  properly deductible on line 35**

In the instant case, Debtor deducted on line 35 of form 122C a total of $7,651.  The Trustee does not oppose a deduction on line 35 in the amount of $3,151, which is the amount of priority tax debt owed by Debtor.  The deduction in controversy is the remaining $4,500, which represents the amount that Debtor agreed pre-petition to pay to Debtor's attorney for representation in the Chapter 13.

Debtor's attorney's fees are entitled to priority, administrative claim status in Chapter 13 cases.  General Order 22-2017 in the Bankruptcy Court for the Northern District of Georgia provides in section 3.0 that "[u]pon confirmation of the plan, the unpaid fees, expenses, and costs of the Debtor's attorney set forth [in the plan] are allowed as administrative expenses under 11 U.S.C. §503(b)…"  Section 507(a)(2) of the Bankruptcy Code provides priority status for "administrative expenses allowed under section 503(b)," second only to the Trustee's fee and claims for holders of Domestic Support Obligations.  The claims of governmental units, including the unobjectionable priority deduction of the taxes in the instant case is given lower priority than the administrative expense claim of Debtor's attorney fee.  11 U.S.C. §507(a)(8).

Debtor's attorney's fee, as outlined on filed form 2016(b), was agreed to in a written retainer prior to the filing of the instant case, pursuant to 11 U.S.C. §508(a).  As such, it is a debt as defined under §101 of the Bankruptcy Code, which defines debt as "liability on a claim." 11 U.S.C. §101(12).  The Code further defines a claim as a "right to payment, whether or not such right is...

unliquidated... contingent..." 11 U.S.C. §101(5).  Here, Debtor's attorney's fee may be both contingent and unliquidated, subject to this Court's review under §330(a)(4)(B).  That the fees are contingent or unliquidated until entry of the confirmation order poses no obstacle to their deductibility on Form 122C, because they are "virtually certain at the time of confirmation." Hamilton v. Lanning, 560 U.S. 505 (2010).   In fact, the order confirming that plan, and authorizing the payment of debtor's attorney's fee as set forth in the plan, makes those fees absolutely certain.

A hallmark of the allowable deductions enumerated in §707(b) is that the deductible expenses of the debtor are "necessary".  At confirmation of the plan, the fees of debtor's attorney are allowed as an administrative expense under §503(b) by way of §330, which allows for fees for a debtor's attorney in Chapter 13 "based on a consideration of the benefit and necessity of such services."  11 U.S.C. 503(b)(2); 11 U.S.C. 330(a)(4)(B).  Debtor's attorney fees are subject to review by the Court and allowed, as are many §707(b) deductions, based on their necessity to the plan of reorganization.

**Below-the-Line: Alternatively, Debtor's attorney's fees are deductible after determination of disposable income**

If the Court should find that debtor's attorney's fees are not deductible on any line of Form 122C, those fees should be deductible from the pool of available funds to non-priority unsecured creditors.  There is support for this position in both case law and the Advisory Committee Comments to the Official Form 122C.

In In re Hemker, the court examined the question of whether the pool of funds represented by the debtor's resulting DMI was required to be paid only to non-priority unsecured creditors, or whether the same funds could be used to pay priority claims also. 2015 Bankr. Lexis 3122

(Bankr.C.D.Ill. 2015). Specifically, the court addressed the issue of priority attorney fees being paid from the pool of funds available to unsecured creditors *after* making a determination of the debtor's DMI. The Hemker debtor's DMI on form B22C was $992.22, which generated a pool of funds for disbursal to unsecured creditors of $59,953.20. The debtor, however, proposed in the plan to pay only $56,127.90 to non-priority unsecured creditors, with the remaining $2,810 to be paid to the fees of the debtor's attorney. The court was not deterred by the "unfortunate omission" of a specific line-item deduction for attorney fees on Form B22C, holding that §1325(b)(1)(B) required payment to unsecured creditors, which did not conflict with payment to unsecured priority attorney fees. Id.

The Hemker court also relied on the Advisory Committee Comments to Form B22C, the form that preceded today's Form 122C, in holding that priority attorney fees were properly paid out of the pool for unsecured creditors. "Section 1325(b)(1)(B) requires that Disposable income contributed to a Chapter 13 plan be used to pay 'unsecured creditors.' A debtor's attorney who has not taken a security interest in the debtor's property is an unsecured creditor who may be paid from disposable income." Id. at 7, quoting Advisory Committee Comments to Form B22C). Several courts have reached the opposite conclusion—that priority claims are not included in the term "unsecured creditor" as used in §1325(b)(1)(B). See, e.g., In re Amato, 366 B.R. 348, Bankr.N.J. (2007), In re McDonald, 361 B.R. 527, Bankr.D.Mt. (2007), In re Echeman, 378 B.R. 177, Bankr.S.D. Ohio (2007). Importantly, each of these cases specifically rejected arguments for deducting priority claims after determining a debtor's DMI on the ground that doing so would amount to double-counting a priority claim that had already been deducted "above-the-line" in order to determine the amount of debtor's DMI. The court in Echeman summarized its position on the relationship between priority debts and DMI, stating "[P]riority unsecured claims can be

counted once, no more, no less, in determining which funds are left for nonpriority unsecured creditors." Id. at 183.  Although the Echeman court holding rejected the deduction of priority debts below-the-line, that holding should be read primarily as a rejection of double-dipping deductions specifically enumerated as above-the-line deductions, and in fact specifically states that priority debts should be deducted "no less" than once.

**The congressional purpose of 707(b) requires that Debtor's attorney fees are deductible**

The Supreme Court noted in Ransom that "Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'" Ransom v. FIA Card Services, 562 U.S. 61 at 71 (2011), quoting H.R.Rep. No. 109–31, pt. 1, p. 2 (2005).  The Trustee's argument rejecting the deduction of attorney fees emphasizes that debtors must pay the "maximum" without regard to a debtor's ability to afford to pay.

The affordability of a Chapter 13 plan is a requirement under 11 U.S.C. 13225(a)(6), and is not at odds with the directive in Ransom that §707 requires that Chapter 13 debtors pay the maximum that they can afford.  In fact, the general structure and mechanical application of the test outlined in §707 defines both the affordability and maximum payment requirements that Ransom sets out.  The starting point in §707 is the debtor's Current Monthly Income, from which are deducted the debtor's "reasonably necessary" living expenses according to the IRS tables (707(b)(2)(A)(ii)), debtor's payments on secured claims (707(b)(2)(A)(iii)), debtor's payments on priority claims (707(b)(2)(A)(iv)).  After deducting those expenses, the test arrives at the resulting DMI number which, according to §1322(a)(4) must be paid into the plan for distribution to unsecured creditors.

Following the structure of §707, if Debtor is not allowed a deduction for attorney fees under subsections (ii), (iii), or (iv), or alternatively is not allowed to deduct the fees from the resulting DMI, there is no other source of funds from which Debtor could pay his attorney fees under the plan.  This absurd result could not have been contemplated by Congress.  The court in <u>Hemker</u> relied on this logic in confirming the debtor's plan, reasoning that allowing a debtor to deduct his attorney's fees from the amount paid to unsecured creditors "is the only reasonable [interpretation] to avoid unfair results between above median income debtors and below median income debtors." <u>Hemker</u> at 8.  The court reasoned that because a below-median debtor's disposable income is determined based on schedules I and J, "below-median debtors are allowed to pay their attorney fees from their disposable income before they pay nonpriority unsecured debts."  <u>Id</u>.

In another case in which the double-dipping theory is rejected, the Court in <u>In re Wilbur</u> describes the pre-BAPCPA method of calculating a Debtor's disposable income:

> "The pre-BAPCPA debtor would file schedule I exhibiting monthly gross income, and file schedule J exhibiting the debtor's expenses which were arguably reasonably necessary for the debtor's maintenance.  After subtracting the expenses listed on schedule J from the income listed on schedule I, the debtor would obtain his or her Monthly Net Income.  This amount would normally be the amount the debtor proposed to pay to the Trustee in the Chapter 13 plan.  To calculate the amount proposed to be returned to the non-priority unsecured creditors, the debtor would subtract from the plan payment the amounts to be paid to secured and priority unsecured creditors."  <u>In re Wilbur, 344 B.R. 650, at 654 (Bankr. Utah, 2006)</u>

In other words, before the 2005 amendments, a debtor calculated the pool of unsecured creditors after deducting other amounts to be paid, including secured debts, priority tax debts, the fee of the Chapter 13 Trustee, and the debtor's own attorney's fees.  The Supreme Court in <u>Ransom</u> described the purpose of the test in 707(b) as "supplant[ing] the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis…"  <u>Ransom</u>, *supra,* at 65.  There is no indication that Congress intended to change the basic formula for deriving the dividend to non-priority unsecured

creditors rather than simply to bring uniformity and mechanical application to the same pre-BAPCPA formula.

**The effect of deductibility of attorney fees extends to post-confirmation awards of attorney fees**

When the parties argued the instant case at the scheduled hearing on confirmation, this Court inquired as to whether Debtor's position extends to attorney fees on post-confirmation matters.  Debtor contends that post-confirmation matters that generate attorney fees, which are allowed pursuant to General Order 22-2017, sections 3.1 and 3.3, could be a potential basis for modifying a plan post-confirmation.  The General Order provides in section 3.1 that Debtor's attorney must file an application for such fees to be approved, and that the application "must describe how the allowance and payment of the additional fees, expenses, and costs will affect distributions to creditors under the plan."   Although the filing of such an application alone would not, in itself, reduce the dividend to unsecured creditors, in certain circumstances it may be the basis of a separate motion to modify a confirmed plan pursuant to §1329.

**IV. Conclusion**

Every debtor has a finite source of funds with which to fund the case.  In Section 707(b), Congress provided a formula for how to calculate how much a given debtor can afford to contribute to paying non-priority unsecured debts.  That formula is designed to determine the maximum a debtor can pay while maintaining the feasibility that the Code also requires of a plan.  Although there are competing arguments as to whether the debtor should deduct his attorney's fees above-

the-line (within Form 122C) or below-the-line, the formula works only if a debtor is entitled to pay his attorney fees from within his finite source of funds.

Debtor contends that the preferred method of deducting his attorney's fees is the above-the-line method, both because it is statutorily authorized and because it provides clarity and transparency as to how the amounts in the plan are calculated.  However, Debtor contends that if the fees are not deductible above-the-line, that the internal logic of the Code demands that the fees be deductible below-the-line, out of the pool for unsecured creditors.

Because the instant Debtor's plan proposes to pay the required unsecured pool of $38,369.40 under either of the proposed methods, Debtor contends that his proposed plan satisfies the requirements of 11 U.S.C. 1325(b)(1)(B) and that the Trustee's objection should be overruled and the Debtor's plan confirmed.

        Respectfully submitted,

        /s/ Brian Deitz
        Brian Deitz
        GA Bar No: 818416

Attorney for Debtor
Law Office of Jeffrey B. Kelly
107 East Fifth Avenue
Rome, GA 30161
(678) 861-1127
(706) 413-1365 (fax)
lawoffice@kellycanhelp.com