**IT IS ORDERED as set forth below:**

**Date: September 30, 2019**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| JACOB BENJAMIN DUMAS, | CASE NO. 18-62934-JWC |
| Debtor. | |

## <u>MEMORANDUM OPINION</u>

**THIS MATTER** is before the Court on confirmation of the Chapter 13 Plan (as modified

at Doc. No. 29, the "Plan") filed by Jacob Benjamin Dumas ("Debtor").  Nancy J. Whaley,

Standing Chapter 13 Trustee ("Trustee") filed objections to confirmation of the Plan at docket

numbers 17 and 23.  The Court held a confirmation hearing on March 12, 2019.  At the hearing,

Trustee announced that all objections to the Plan had been resolved except one.  The sole remaining

issue is whether Debtor may deduct his attorney's fees in calculating the minimum payment to

1

*nonpriority* unsecured creditors under 11 U.S.C. § 1325(b).[1]  Debtor argues that he may.  Trustee

argues that he may not.  The Court allowed the parties to submit additional briefs in support of

their positions, which both parties did at docket numbers 35 and 36.  The Court has considered the

Plan, the record in Debtor's case, the arguments at the confirmation hearing, the briefs submitted

by counsel, and the arguments and authority therein.  For the following reasons, the Court will

overrule Trustee's objection and confirm the Plan.

## I.    JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.  Confirmation of a

plan is a core matter pursuant to 28 U.S.C. § 157(b)(2)(L).  Venue is proper pursuant to 28 U.S.C.

§ 1409.

## II.    INTRODUCTION

To confirm a chapter 13 plan, all chapter 13 debtors must satisfy the requirements of §

1325.  At issue in this case are the requirements found in § 1325(b), which provides that, upon

objection by the trustee or an unsecured creditor, the court may not confirm a plan unless, as of

the effective date of the plan, (1) unsecured creditors will be paid in full or (2) "the plan provides

that all of the debtor's projected disposable income to be received in the applicable commitment

period . . . will be applied to make payments to unsecured creditors under the plan."  Code §

1325(b)(1).  Trustee objected to the Plan and argues Debtor satisfies neither provision.  There is

no dispute the Plan does not satisfy the first option as Debtor is not paying unsecured creditors in

full.  Debtor argues he satisfies option 2—the projected disposable income test (or "PDI Test").

The PDI Test "establishes a minimum amount to be paid to unsecured creditors based on a

debtor's income and expenditures."  Drake, Bonapfel, Goodman, *Chapter 13 Practice and*

---

[1] All further statutory references are to Title 11 of the United States Code (the "Bankruptcy Code" or "Code") unless
otherwise specified.

*Procedure* § 8:1 (2019 Ed.).  The test has three basic elements:  (1) calculation of projected disposable income ("PDI"); (2) determination of the applicable commitment period ("ACP"); and (3) payment of all PDI received during the ACP to "unsecured creditors."  The question before the Court is whether Debtor may deduct his attorney's fees in calculating the minimum payment to *nonpriority* unsecured creditors under the Plan.  Debtor offers two theories allowing him to do so. First, he argues he may deduct his attorney's fees in calculating his PDI.  Second, he argues that even if he may not deduct the fees in calculating PDI, his attorney is an "unsecured creditor" whose fees may be paid from PDI before nonpriority unsecured creditors.  If he is correct on either theory, the Plan is confirmable.

## III.    <u>BACKGROUND</u>

The facts are not in dispute.  Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on August 4, 2018 (the "Petition Date").  Before filing, Debtor hired the Law Office of Jeffrey B. Kelly, P.C. ("Attorney") to represent him in his bankruptcy case.  Debtor agreed to pay his Attorney $4,500 (the "Attorney's Fees") for such representation.  The amount and reasonableness of the Attorney's Fees are not in dispute.  Debtor treats the Attorney's Fees in § 4.3 of the Plan.  Upon confirmation, the Attorney's Fees will be an allowed administrative expense under § 503(b) to the extent set forth in this Court's General Order 22-2017 and will be entitled to priority pursuant to § 507(a)(2).  Trustee will pay the Attorney's Fees pursuant to the Plan and the General Order, which generally provide that the Attorney's Fees will be paid before any other claims except Trustee's fees and unpaid preconfirmation adequate protection payments. The sole source of funding for the Attorney's Fees will be Debtor's Plan payments.

Debtor is an "above-median" debtor.  The term "above-median" is not found in the Code, but, in simplified terms, it means Debtor has more current monthly income than the median income

of families sharing Debtor's household size and state of residence.  *See* Code § 1325(b)(3).  Debtor

is a resident of Georgia, has a one-person household, and filed his case on August 4, 2018.  The

median family income as of August 4, 2018 for a household with one earner in the State of Georgia

was $46,104.[2]  Debtor's income is more than $46,104; Debtor is "above-median."  Any debtor

who has less income than the applicable median family income is "below-median."  The difference

is significant because the Code requires above-median debtors to calculate PDI differently than

below-median debtors.

All debtors must first look to § 1325(b)(2) to calculate PDI.  That section defines

"disposable income" as "current monthly income received by the debtor . . . less amounts

reasonably necessary to be expended . . . for the maintenance or support of the debtor or a

dependent of the debtor . . . ."  Code § 1325(b)(2).  Debtor's current monthly income is not in

dispute.  The parties' main dispute is whether Debtor's Attorney's Fees fall within "amounts

reasonably necessary to be expended."  The Code prescribes nothing further for below-median

debtors, and the determination of "amounts reasonably necessary to be expended" is left to debtors,

trustees, creditors, and courts to determine on a case-by-case basis.  For above-median debtors,

however, the Code prescribes that "amounts reasonably necessary to be expended . . . shall be

determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)."  Code §

1325(b)(3).  Subparagraphs (A) and (B) of § 707(b)(2), in turn, spell out what is commonly called

the "means test."

The means test and its incorporation into the PDI Test for above-median debtors were

added to the Code by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

---

[2] https://www.justice.gov/ust/eo/bapcpa/20180501/bci_data/median_income_table.htm

("BAPCPA").[3]  The means test is the "heart" of BAPCPA and is designed to ensure that debtors

who can pay their debts do so.[4]  Subparagraphs (A)(ii), (iii), and (iv) of the means test detail a list

of expenses above-median debtors may deduct from current monthly income to calculate monthly

disposable income.  The only deduction under the means test at issue in this case is found at §

707(b)(2)(A)(iv).  That section allows a deduction for "debtor's expenses for payment of all

priority claims (including priority child support and alimony claims) [which] shall be calculated

as the total amount of debts entitled to priority, divided by 60."  Code § 707(b)(2)(A)(iv).  Debtor's

primary argument is that his Attorney's Fees are a priority claim deductible under this provision

of the means test.  The Court refers to this proposed deduction as the "means test deduction."

Debtor accomplishes the means test deduction by including his Attorney's Fees as a line

item deduction on his amended Official Form 122C-2, Chapter 13 Calculation of Your Disposable

Income ("Form 122C-2") filed at docket number 28.  Bankruptcy Rule 1007(b)(6) requires above-

median debtors to file "a calculation of disposable income made in accordance with § 1325(b)(3),

prepared as prescribed by the appropriate Official Form."  Fed. R. Bankr. P. 1007(b)(6).  Form

122C-2 is the appropriate Official Form for above-median debtors to take applicable deductions

under the means test and is designed to track the deductions listed in § 707(b)(2)(A).[5]

Line 35 of Form 122C-2 provides a deduction for "priority claims – such as a priority tax,

child support, or alimony – that are past due as of the filing of the bankruptcy case."  Line 35 of

---

[3] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 110 Stat. 23.

[4] *See Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 64 (2011) (citing H.R. Rep. No. 109–31, pt. 1, p. 2 (2005)).

[5] Below-median debtors do not complete Form 122C-2 because the means test is not applicable to them.  Instead, they rely primarily on Schedule J to deduct expenses in calculating PDI.  Schedule J, however, does not include deductions for priority claims, trustee fees, and arrearage payments on secured debt.  Nonetheless, in practice these amounts are generally accounted for in calculating the minimum payment to nonpriority unsecured creditors.  *See In re Hemker*, 2015 Bankr. LEXIS 3122, *8 (Bankr. C.D. Ill. Sep. 8, 2015) ("below median income debtors are allowed to pay attorney fees from their disposable income before they pay nonpriority unsecured debtors").

Debtor's amended Form 122C-2 takes a deduction of $7,651, which includes $3,151[6] for two priority tax claims and $4,500 for the Attorney's Fees.  With the Attorney's Fees included in the deduction, Debtor calculates his monthly disposable income at $639.49.  Debtor multiplies this monthly income by 60 (his ACP) to get a total PDI of $38,360.40, which Debtor proposes to pay to nonpriority unsecured creditors under the Plan.

Trustee's only objection is that Debtor may not include the Attorney's Fees in line 35 or anywhere else in Form 122C-2.  Trustee contends that neither Form 122C-2 nor the Code allow any deduction for attorney's fees when calculating disposable income.  Trustee is correct that line 35 of Form 122C-2 excludes chapter 13 attorney's fees, as the Committee Notes make clear:

> Priority debt, deductible pursuant to § 707(b)(2)(A)(iv), is treated on a single entry line, also requiring division by 60. The instruction for this line makes clear that only past due priority debt—not anticipated debts— should be included. Thus, future support or tax obligations, and future fees that might be payable to a Chapter 13 debtor's attorney, are not included.

Official Form 122 (Committee Note C.2).  If Attorney's Fees are excluded from the deduction, Debtor's monthly disposable income becomes $714.49, which Trustee multiplies by 60 to get a total PDI of $42,869.40.  Thus, deducting the Attorney's Fees in line 35 results in a dollar-for-dollar reduction of total PDI.

In response, Debtor argues that even if Trustee is correct that Form 122C-2 and § 707(b)(2)(A)(iv) do not allow the means test deduction, he may treat his Attorney as an "unsecured creditor" under § 1325(b)(1)(B) and pay the Attorney's Fees from the PDI pot of $42,869.40. Because the Attorney's Fees must be paid before nonpriority unsecured claims, Debtor argues, the

---

[6] The two priority tax claims are a $1,055.96 claim filed by the Georgia Department of Revenue and a $2,035.72 claim filed by the IRS, which total $3,091.68 instead of $3,151.  No dispute exists as to Debtor's inclusion of both priority tax claims in line 35, but it appears Debtor includes approximately $60 of unsecured portions of the two claims.  The total deduction in line 35 should be $7,591.68 instead of $7,651.  While this amount is small, confirmation of the Plan will be conditioned upon Debtor amending his Form 122C-2 and Plan to reflect appropriate changes for the proper amount of priority tax claims.

Attorney's Fees should be deducted from the PDI pot before determining the minimum payment to nonpriority unsecured creditors. The Court refers to this proposed deduction as the "pot deduction." Trustee argues the term "unsecured creditors" is limited to nonpriority unsecured creditors and Debtor's Attorney is not a "creditor" as defined in the Code.

Importantly, Debtor does not request to use both deductions; he seeks only one or the other. Either deduction produces the same result: nonpriority unsecured creditors will receive $4,500 less than they would receive if Debtor were not allowed to deduct the Attorney's Fees under either theory. The Plan is confirmable if Debtor may deduct Attorney's Fees under either theory.

## IV.   ANALYSIS

### A.   Existing Case Law

Only a few cases have addressed the deductibility of attorney's fees under the PDI Test post-BAPCPA, but a clear majority has emerged allowing a deduction for attorney's fees for above-median debtors. Most of these cases have adopted or endorsed the pot deduction for attorney's fees. *See In re Jiter*, 2011 WL 477829, *1 (Bankr. E.D. Wis. Feb. 3, 2011); *In re Minahan,* 394 B.R. 116, 128 n.27 (Bankr. W.D. Va. 2008); *In re Nething*, 2008 WL 2246072, *4 (Bankr. E.D. Wis. May 30, 2008); *In re Brown*, 2008 Bankr. LEXIS 1227 (Bankr. S.D. Ohio Apr. 15, 2008); *In re Echemen*, 378 B.R. 177, 182 (Bankr. S.D. Ohio 2007); *In re Puetz*, 370 B.R. 386, 390 (Bankr. D. Kan. 2007). Several cases, however, have adopted, or at least acknowledged the propriety of, the means test deduction. *See In re Williams*, 394 B.R. 550, 564 (Bankr. D. Col. 2008) ("Section 707(b)(2)(A)(iv) allows an above-median income debtor to subtract *all priority claims* in arriving at PDI. Such deductible priority claims must include those expenses given administrative expense priority by § 503."); *In re Hemker*, 2015 Bankr. LEXIS 3122, *7 (Bankr. C.D. Ill. Sep. 8, 2015) (technically adopting the pot deduction but basing its ruling in part on

court's reading of § 707(b)(2)(A)(iv) as including attorney's fees); *In re Johnson*, 408 B.R. 811, 814 n.11 (Bankr. W.D. Mo. 2009) (noting that technically attorney's fees should be deducted as a priority claim pursuant to § 707(b)(2)(A)(iv) even though local practice allowed the pot deduction).

While all of the foregoing cases adopt or endorse one of the deductions for attorney's fees, the cases struggle to reconcile how the deductions fit into the framework of the PDI Test, the means test, their respective applications to above and below-median debtors, and Form 122C-2. The cases are replete with phrases such as "impossible choice," "dueling absurd results," "inconsistent provisions," and "unfortunate omissions."  It is no secret that "the final version of BAPCPA has been roundly criticized as poorly crafted, containing a multitude of 'typos, sloppy choices of words, hanging paragraphs, and inconsistencies .... [as well as] largely pointless but burdensome new requirements, overlapping layers of screening, mounds of new paperwork, and structural incoherence.'"[7] The issue before the Court appears to be no exception, and the Court joins in the apparent frustration of other courts that have previously struggled with the question before it.

Most of the frustration stems from inclusion of a deduction for "priority claims"[8] in § 707(b)(2)(A)(iv) of the means test coupled with use of the term "unsecured creditors" in § 1325(b)(1)(B).  Many courts have held the plain meaning of "unsecured creditors" normally includes both priority and nonpriority unsecured creditors.  Applying that plain meaning in the context of § 1325(b)(1)(B), however, would allow debtors to deduct priority claims in calculating

---

[7] *In re Gonzalez*, 597 B.R. 133, 141 (Bankr. D. Colo. 2018) (citing Jean Braucher, *The Challenge to the Bench and Bar Presented by the 2005 Bankruptcy Act: Resistance Need Not Be Futile*, 2007 U. Ill. L. Rev. 93, 97 (2007)).

[8] As discussed below, the term "priority claim" does not appear in any other substantive provision of the Code, and its only other appearance in the Code is in the heading of a provision applicable only in railroad reorganizations.

PDI (*i.e.*, a means test deduction) while simultaneously paying those same priority claims with PDI (*i.e.*, the pot deduction).  This would allow debtors to double count priority claims to the detriment of nonpriority unsecured claims, which courts appear to unanimously agree (and this Court agrees) is an absurd result.  Thus, most cases have interpreted "unsecured creditors" as used in § 1325(b)(1)(B) to mean nonpriority unsecured creditors.  *E.g., In re Echemen*, 378 B.R. at 181-82; *In re Puetz*, 370 B.R. at 390; *In re McDonald,* 361 B.R. 527, 531 (Bankr. D. Mt. 2007); *In re Wilbur*, 344 B.R. 650, 654 (Bankr. D. Utah 2006).

This interpretation, however, leads to its own set of difficulties.  For instance, below-median debtors generally still use schedule J to calculate disposable income, but schedule J does not include any deductions for priority claims.  Some courts have expressed concern that interpreting "unsecured creditors" to include only nonpriority unsecured creditors may lead to the conclusion that below-median debtors may not pay priority claims with projected disposable income, meaning their plans would never be feasible without some source of payment outside of income.  *See, e.g.*, *Williams*, 394 B.R. at 564; *Echemann*, 378 B.R. at 182 n.7.  The solution to the dueling absurdities of double counting priority claims for above-median debtors and unavoidable infeasibility for below-median debtors is to somehow read the statute so that "the effective result [should be] the same for all debtors—priority unsecured claims can be counted once, no more, no less, in determining which funds are left for nonpriority unsecured creditors."  *Williams*, 394 B.R. at 564 (quoting *In re Echemann* at 82 n.7).

A second difficulty arises in cases in which courts, in apparent reliance on Form 122C-2, exclude administrative expenses and other post-petition priority claims from the definition of "priority claims" under § 707(b)(2)(A)(iv).[9]  *See, e.g., In re Puetz*, 370 B.R. at 386; *In re Minahan*,

---

[9] As discussed in detail below, the Court disagrees with this conclusion.

394 B.R. at 128 n.7.  While deciding (or at least accepting) that there is no means test deductions for attorney's fees and other administrative expenses, they nonetheless find it would be inconsistent to require debtors to pay such claims as priority claims under a plan while not allowing such claims to be deducted from the PDI pot.  To reconcile the inconsistency, these courts adopt the pot deduction for any priority claims not otherwise captured by the means test.  *See In re Puetz*, 370 B.R. at 392 ("the Court should logically and, in fact, plainly, read 'unsecured creditors' in § 1325(b)(1)(B) as a catchall phrase to address creditors not specifically referenced elsewhere").  Thus, to reconcile multiple dueling absurdities, some courts have concluded that "unsecured creditors" under § 1325(b)(1)(B) rests in superposition like Schrödinger's cat,[10] simultaneously excluding and including priority creditors until measured by an above-median or below-median debtor.  Despite these difficulties, the one thing all but one of the cases agree upon is that attorney's fees should be deducted when calculating the minimum payment to nonpriority unsecured creditors.

Trustee cites, and the Court's own research has found, only one case allowing no deduction for attorney's fees.  *See In re Amato*, 366 B.R. 348, 353 (Bankr. D. N.J. 2007).  In *Amato*, the Court appears to rely almost exclusively on Form 122C-2 to deny any deduction for attorney's fees, despite having apparent misgivings about such a conclusion.  The court acknowledged that the absence of attorney's fees on the form was an "unfortunate omission," but the court felt "constrained by the language of Official Form [122C-2] and, thus, will not read more into the language of the [*sic*] set forth in the prescribed Official Form so as to provide for the deduction of debtor's attorneys fees."  *Id.*  Although Form 122C-2 does not include a means test deduction for attorney's fees, the Committee Notes to the form clearly endorse the pot deduction:

---

[10] The famous thought experiment of quantum physicist Erwin Schrödinger imagined a cat simultaneously dead and alive.

10

> The Chapter 13 form does not provide a deduction from disposable income for the Chapter 13 debtor's anticipated attorney fees. No specific statutory allowance for such a deduction exists, and none appears necessary. Section 1325(b)(1)(B) requires that disposable income contributed to a Chapter 13 plan be used to pay "unsecured creditors." A debtor's attorney who has not taken a security interest in the debtor's property is an unsecured creditor who may be paid from disposable income.

Official Form 122 (Committee Note D.3). It is not clear why *Amato* did not follow the Committee Note endorsing the pot deduction, but it relied in part on two decisions rejecting the pot deduction for other priority claims and trustee fees. *See In re Wilbur*, 344 B.R. 650; *In re McDonald,* 361 B.R. 527.

Neither *Wilbur* nor *McDonald* addressed attorney's fees directly. In *Wilbur*, the question was whether a debtor could deduct priority claims twice, once under the means test and again from the PDI pot. Which priority claims are at issue in *Wilbur* is unclear, but attorney's fees are not mentioned and there is no apparent dispute the priority claims were properly included as means test deductions. The court determined that allowing the pot deduction as well would be absurd because it allowed for double counting. The court thus interpreted the term "unsecured creditors" to exclude priority creditors. *In re Wilbur*, 344 B.R. at 654-55. In *McDonald*, the Court similarly ruled that trustee's fees are not included in the "unsecured creditors" pool because such fees are deducted in the PDI calculation and double counting would be absurd. *McDonald* likewise concluded the term "unsecured creditors" does not include priority creditors. *In re McDonald* 361 B.R. at 530-31.

Importantly, *Amato* did not analyze the language of § 707(b)(2)(A)(iv) and whether attorney's fees should be included in the means test deduction. Instead, *Amato* relied on Form 122C-2's exclusion of attorney's fees from the means test deduction. Several courts, however, have recognized that, despite the absence of a deduction on Form 122C-2, the plain language of § 707(b)(2)(A)(iv) includes allowed attorney's fees entitled to priority. *In re William*s, 394 B.R. at

11

563-64 (finding that § 707(b)(2)(A)(iv) allows for deduction of attorney's fees even though the form omits such a deduction); *In re Hemker*, 2015 Bankr. LEXIS 3122 at *7 (characterizing the lack of deduction for attorney's fees of a chapter 13 debtor on the official form as an "unfortunate omission").

In short, the Court disagrees with *Amato* and concurs with the majority conclusion that attorney's fees should be deducted before calculating the minimum amount to be paid to nonpriority unsecured creditors. Whether that is more appropriately done through a means test deduction or pot deduction is analyzed below.

**B.**   **The Means Test Deduction**

  1.  The Plain Meaning of "Priority Claims" Includes Allowed Administrative Expenses

The Court begins its analysis, as it always must, with the language of the Code. If "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Debtor first argues that he is entitled to deduct his Attorney's Fees as part of the means test, specifically as a "priority claim" under § 707(b)(2)(A)(iv).[11]

Section 707(b)(2)(A)(iv) allows a deduction for "debtor's expenses for payment of all priority claims (including priority child support and alimony claims) [which] shall be calculated as the total amount of debts entitled to priority, divided by 60." Code § 707(b)(2)(A)(iv). The question before the Court thus seems rather simple: do attorney's fees for a chapter 13 debtor count as a "priority claim" for purposes of § 707(b)(2)(A)(iv)? The Court finds that they do.

---

[11] *See supra*, pt. III, p. 5.

"Priority claim" is not defined in the Code, but "claim" is defined broadly as

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Code § 101(5). The definition of claim suffers from few limitations. The only question to answer when determining whether something is a claim is whether the something is a right to payment. If so, then the something is a claim. The Court easily concludes that the Attorney's Fees represent a right to payment held by Debtor's Attorney. The Attorney's Fees are a claim.

"Priority" is not defined by the Code explicitly, but § 507 is titled "Priorities" and provides in subsection (a) a priority order for claims and expenses. Code § 507(a). Subsection (a)(2) includes as the second priority category "administrative expenses allowed under section 503(b) of this title . . . ." Code § 507(a)(2). Section 503(b), in turn, is titled "Allowance of administrative expenses" and provides that "after notice and a hearing, there shall be allowed administrative expenses, including—(2) compensation and reimbursement awarded under section 330(a) of this title . . . ." Code § 503(b). Section 330(a)(4), in turn, provides for the allowance of "reasonable compensation to [a chapter 13] debtor's attorney." Upon confirmation of the Plan, the Attorney's Fees will be allowed under § 330(a)(4). The Attorney's Fees, which no one has challenged as to reasonableness, will therefore be an allowed administrative expense under § 503(b)(2) entitled to priority under § 507(a)(2).

Having determined the Attorney's Fees are a claim entitled to priority, it seems straightforward to conclude that the Attorney's Fees easily fall within the meaning of "priority claims" and may be deducted pursuant to § 707(b)(2)(A)(iv). Several courts have reached the

13

same conclusion.  *See In re Williams*, 394 B.R. at 564; *In re Hemker*, 2015 Bankr. LEXIS 3122,

*7; *In re Johnson*, 408 B.R. at 814 n.11.

Trustee disputes this straightforward analysis of the plain meaning of "priority claims" and

argues for a more nuanced approach.  Trustee cites the well-known canon of statutory construction

that "interpretation of a statutory section by examining its plain language requires more than

reviewing words or sub-sections in isolation; it requires consideration of the context, reading all

relevant statutory provisions together as a whole."  *In re Echeman,* 378 B.R. at 180.  The Court

agrees this canon applies but disagrees as to the result it dictates.

Trustee argues that reading "priority claim" in the context of §§ 507, 503(b), and 330

requires an interpretation that excludes all administrative expenses, including attorney's fees.  The

basic reasoning is that § 507 makes a careful distinction between claims and expenses, and neither

§§ 507, 503(b), nor 330 ever refer to an administrative expense or attorney's fees as a claim.

Therefore, a claim and an expense are something different.  By using "priority claims," Trustee

argues, § 707(b)(2)(A)(iv) harnesses the distinction between a claim and an expense to exclude

administrative expenses.  Trustee offers no authority in support of her position that an expense is

something other than a claim or that an administrative expense is not a priority claim, whether

under § 707(b)(2)(A)(iv) or otherwise.  The Court's own research found no case even addressing

this possibility.[12]  While Trustee's argument has some facial appeal when considering only §§ 507,

503(b), and 330, reading the terms at issue in the context of the Code as a whole confirms that

administrative expenses are priority claims.

---

[12] Several of the cases adopting the pot deduction implicitly conclude that "priority claims" under § 707(b)(2)(A)(iv)
does not include administrative expenses, but they do so without substantial analysis and appear to rely either on Form
122C-2 or two sentences in an article written by Judge Eugene Wedoff before BAPCPA went into effect.  *See* Eugene
R. Wedoff, *Means Testing in the New § 707(b)*, 79 AM. BANKR. L.J. 231, 273 (Spring 2005).  As discussed below,
the Court disagrees with Form 122C-2's exclusion of attorney's fees, and the cited portion of Judge Wedoff's article
is not applicable to chapter 13 cases.

14

Every priority-implementing provision in chapters 7, 9, 11, 12, and 13 uses the word "claim" in reference to administrative expenses.  For example, § 726 gives top priority to "payment of *claims* of the kind specified in, and in the order specified in, section 507 of this title . . . ."  Code § 726(a)(1) (emphasis added); *see also* Code §§ 752(a) and 766(h) and (i).  No reference to an "expense" is to be found in § 726(a)(1), but it is beyond dispute that the "claims" in § 726 include administrative expenses.  Sections 943(b)(5) and 1129(a)(9) require all chapter 9 and 11 plans to pay administrative expenses in full.  Those sections reference only "claims" and not "expenses," each using the word "claim" four separate times specifically in reference to § 507(a)(2) administrative expenses.  Section 1123(a)(1) uses the single word "claim" to commingle administrative expenses with other priority claims that need not be classified in chapter 11 plans.  *See* Code § 1123(a)(1) (requiring plans to "designate . . . classes of claims, other than claims of a kind specified in section 507(a)(2) [administrative expenses], 507(a)(3) [unsecured 502(f) claims], or 507(a)(8) [priority taxes]").  All of these Code sections unquestionably consider administrative expenses to be "claims" and never once use the term "expense."

Closer to home for chapter 13 cases, § 1322(a)(2) requires chapter 13 plans to "provide for the full payment, in deferred cash payments, of all *claims* entitled to priority under *section 507* of this title, unless the holder of a particular *claim* agrees to a different treatment of such *claim* . . . ."  Code § 1322(a)(2) (emphasis added).  Again, the section uses only the term "claim" in reference to § 507 without a single mention of "expenses," yet the section is commonly understood to include administrative expenses.  *See, e.g.,* 8 COLLIER ON BANKRUPTCY, ¶ 1322.03 (16th ed.) ("by virtue of section 1322(a)(2), the plan must propose that all allowed claims entitled to priority under section 507, including filing fees and allowed administrative expenses . . . be paid in full"); *In re Busetta-Silvia*, 314 B.R. 218 (B.A.P. 10th Cir. 2004); *In re Swan,* 98 B.R. 502 (Bankr. D. Neb.

1989) (fees for debtor's counsel are administrative expenses allowed under § 503, entitled to priority under § 507, and entitled to full payment under § 1322); *Cornelison v. Wallace (In re Cornelison),* 202 B.R. 991 (D. Kan. 1996) (post-confirmation attorneys' fees are priority administrative expenses entitled to full payment under § 1322(a)(2)); *In re Hanson,* 223 B.R. 775, 776–81 (Bankr. D. Or. 1998) ("a plan must provide for payment in full of administrative claims. 11 U.S.C. § 1322(a)(2)").  Section 1326(b)(1) specifies when administrative expenses must be paid under a plan and uses the term "claim" specifically in reference to § 507(a)(2), *i.e.*, administrative expenses.  Chapter 12 is no different.  *See* Code §§ 1222 and 1226 (similarly using the word "claim" in reference to administrative expenses).  The Code is clear that administrative expenses are in fact claims despite the distinction between claims and expenses in § 507.

Is there a distinction to be made between the foregoing Code sections and § 707(b)(2)(A)(iv), which has the unique distinction of being the only Code section to use the term "priority claims" in a substantive provision?  Nearly every Code section referring to § 507 uses the phrase "claims of the kind specified in . . . section 507" and, when needed, lists specific subsections to be included (or excluded).  *See, e.g.,* §§ 726(a), 1123(a)(1), 1129(a)(9), 1226(b)(1), and 1326(b)(1).[13]  The Code itself offers little insight into any specialized meaning of the term "priority claim," but what insight is offered supports a meaning that includes administrative expenses.  The only other appearance of the term "priority claims" in the Bankruptcy Code is in the heading[14] of § 1171, found in subchapter IV of chapter 11 and applicable only to railroad

---

[13] Sections 1222(a)(2) and 1322(a)(2) uniquely use the phrase "claims entitled to priority under section 507," which is more like the term "priority claims" than the standard reference of "claims of a kind specified in 507."

[14] While statutory headings "cannot substitute for the operative text of the statute[, they] 'are tools available for the resolution of a doubt about the meaning of a statute.'"  *Florida Dep. of Rev. v. Piccadilly Cafeterias, Inc.* 554 U.S. 33, 47 (2008) (citing *Porter v. Nussle,* 534 U.S. 516, 528, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)).

16

reorganizations.  That section, which appeared in the original enactment of the Code,[15] specifies

two types of claims given priority in railroad reorganizations.  The first category of "Priority

Claims" under the section is for personal injury claims that shall be "paid as an administrative

expense."  Code § 1171.  Thus, the only other appearance of the term "priority claims" in the Code

predates § 707(b)(2)(A)(iv) by over twenty-five years and explicitly includes an administrative

expense.

2.  <u>Legislative History</u>

If any ambiguity remains after reference to the Code itself, the Code's legislative history

repeatedly confirms that the term "priority claim" includes administrative expenses.  The Senate

Report for § 364, as originally enacted, twice uses the term "priority claim" explicitly in reference

to administrative expenses—once to the specific administrative expenses authorized under § 364

and once in reference to all administrative expenses given priority under § 507(a)(1).  S. Rep. No.

989, 95th Cong. 2d Sess. at 58, *reprinted in* 1978 U.S.C.C.A.N. 5844.  Likewise, the Senate Report

accompanying § 726 explicitly refers to "priority claimants" without any exclusion for

administrative expense claimants.  *Id.* at 97.  The Senate Report accompanying §§ 1123(a) and

1322(a)(2) uses the term "priority claims" in reference to § 507(a)(2) administrative expense

claims.  *Id.* at 119, 141.

The legislative history of BAPCPA further bolsters the Court's interpretation of "priority

claims."  While the main body of the House Report accompanying BAPCPA says essentially

nothing about § 707(b)(2)(A)(iv) or the term "priority claims" as used therein, footnote 61 makes

clear that "a debtor's monthly expenses may also include . . . claims *and expenses* entitled to

priority under section 507 of the Bankruptcy Code . . . ."  H. Rep. 31, 109th Cong. at 13 n.61,

---

[15]   Bankruptcy Code of 1978, Pub. L. No. 95-598, § 101, 92 Stat. 2643.

*reprinted in* 2005 U.S.C.C.A.N. 99 (emphasis added).   This statement directly contradicts Trustee's main thesis—that "priority claims" exclude expenses under § 507—and directly supports Debtor's position and the Court's view.   Further, contrary to Trustee's argument, the fact that the House Report does not explicitly reference a deduction for attorney's fees does not indicate an intent by Congress to exclude attorney's fees.   No priority claims garner mention in the legislative history specific to § 707(b)(2)(A)(iv) other than child support and alimony claims (which also are the only two meriting specific mention in the statute).   The Court does not read the Trustee's argument to be that child support and alimony are the only priority claims worthy of deduction. The Court reads nothing into the absence of a specific deduction for attorney's fees in the legislative history or the statute itself because a specific reference would be redundant.

That attorney's fees are not specifically mentioned in the legislative history or the statute supports the Court's interpretation.   While no other provision of the Code referencing § 507 uses the term "priority claim," Congress knows how to exclude specific classes of claims under § 507 with clarity and precision.   It has never used the general term "priority claim" to exclude a type of claim entitled to priority.   If Congress intended a new paradigm for excluding administrative expenses from the scope of claims entitled to priority, the Court expects it would do so with clarity, or at least some mention of such intent in the legislative history.   It would be curious for Congress to do it with a phrase that the Code, its legislative history, and BAPCPA's legislative history commonly and historically understood to include administrative expenses.

The purpose behind the means test as incorporated into the PDI Test also supports the Court's interpretation of priority claims to include attorney's fees.   In *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61 (2011), the Supreme Court analyzed whether a chapter 13 debtor was entitled to take a specific deduction under the means test.   The question in *Ransom* was not whether the statute

18

provided for a specific category of expense, but whether a specific debtor qualified to take the

deduction in a category in which the debtor had no actual expenses.  In finding that the debtor

could not take the deduction, the Court stated:

> [D]ebtor should be required to qualify for a deduction by actually incurring
> an expense in the relevant category.  If a debtor will not have a particular
> kind of expense during his plan, an allowance to cover that cost is not
> "reasonably necessary" within the meaning of the statute.
>
> Finally, consideration of BAPCPA's purpose strengthens our
> reading of the term "applicable."  Congress designed the means test to
> measure debtors' disposable income and, in that way, "to ensure that [they]
> repay creditors the maximum they can afford."  This purpose is best
> achieved by interpreting the means test, consistent with the statutory text,
> to reflect a debtor's ability to afford repayment.

562 U.S. at 70-71.  The Court agrees with Debtor that Trustee's position places too much emphasis

on "repay creditors the maximum" without sufficient consideration for what debtors can "afford."

Unlike in *Ransom*, Debtor here actually has the expense he seeks to deduct.  Moreover, that

expense must be paid under the Plan, and it must be paid before all other unsecured creditors.  *See*

Code §§ 1322(b)(2) and 1326(b)(1).  The purpose of the means test is "best achieved by

interpreting [it], consistent with the statutory text, to reflect a debtor's ability to afford repayment.

*Id.* at 71.  That purpose is not served by interpreting the means test to exclude actual expenses that

a debtor must pay under a plan before other unsecured creditors.

Pre-BAPCPA practice also supports the Court's interpretation of "priority claims."  Prior

to BAPCPA, chapter 13 plans "routinely paid the debtor's net income figure first toward priority

claims in the order set forth in § 507—which included . . . postpetition or administrative expenses

(such as attorney's fees and trustee's compensation)—and then applied the balance to the

nonpriority unsecured creditor class."  *In re Williams* 394 B.R. at 563.  Courts should not "read

the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress

intended such a departure."  *Hamilton v. Lanning*, 560 U.S. 505, 517 (2010).  Given the lack of

any clear intention to alter the common understanding of "priority claim" or to specifically exclude attorney's fees from the deduction, the Court will not read "priority claims" to erode the pre-BAPCPA practice of allowing debtor's to pay attorney's fees before calculating payments to nonpriority unsecured creditors.

What, then, is to be made of § 507's seemingly careful distinction between expenses and claims?  Trustee argues that the distinction between "expense" and "claim" is to emphasize an intended difference in their treatment.  The Court agrees.  But Trustee misconstrues which term's treatment is being emphasized to the exclusion of the other.  While the Code does not use the term "claim" or "priority claim" to the exclusion of administrative expenses, the Code does use the term "administrative expense" to specifically designate certain types of claims as administrative expenses under § 503(b).  *See, e.g.*, Code §§ 364(a)-(c), 1114(e)(2), 1116(6)(B), and 1171(a).  Administrative expenses generally must be paid before any other unsecured claims, even most priority claims, and often are paid during the pendency of cases in advance of other creditors, even other priority creditors.  *See, e.g.,* Code § 1326(b)(1).  Administrative expenses are priority claims with benefits.  It makes sense that the Code would employ a unique term to designate which priority claims are bestowed with these additional benefits.  The distinction between claims and expenses in § 507 is not made for the purpose of excluding administrative expenses from the benefits of priority treatment.  The distinction is made for the converse purpose—to exclude most priority claims from the additional benefits that attach to administrative expenses.

3.  Other Arguments

Trustee also argues that the distinction between "expenses" and "claims" in § 507 is the result of administrative expenses not meeting the definition of a prepetition claim.  In that way, she argues, they are more like post-petition claims under § 1305, which are not deductible under

20

the PDI Test.  Since § 1305 claims are a type of post-petition claim that do not get deducted, the argument goes, then attorney's fees, as a post-petition administrative expense, should not be deducted either.  The Court is not persuaded.  Courts have rejected the argument that a chapter 13 debtor's attorney's fees (or administrative expenses) are the same thing as § 1305 claims.  *In re Hanson,* 223 B.R. 775, 776–81 (Bankr. D. Or. 1998) ("The postconfirmation fees and costs of debtor's counsel related to the Chapter 13 case are administrative expenses, a specific category of post-petition debts distinct from the more general types of consumer debts covered by section 1305(a)(2)."); *In re Phillips,* 219 B.R. 1001, 1009 (Bankr. W.D. Tenn. 1998) (disapproving practice of debtor's attorney filing post-petition claims under § 1305 for routine prepetition attorneys' fees and reimbursement of expenses).  Administrative expenses and § 1305 claims are two different things, with different characteristics and different treatment under the Code.  Unlike administrative expenses, § 1305 claims are not required to be paid under a plan and obtain no special priority under the Code.  The fact that § 1305 claims are not deductible under the PDI Test does not mean that administrative expenses are not deductible as priority claims.[16]

Trustee offers one other statutory argument in support of her position that "priority claims" exclude administrative expenses.  Trustee argues that the separate deduction for the "actual administrative expenses of administering a chapter 13 plan" (*i.e.*, chapter 13 trustee fees) found in § 707(b)(2)(A)(ii)(III) shows that no other administrative expenses should be deducted in a debtor's PDI calculation.  Trustee invokes the canon of statutory construction *expressio unius est exclusio alterius* and cites to a Judge Wedoff article in support.  *See* Eugene R. Wedoff, *Means*

---

[16] Further, while Trustee's statements are supported by case law, it is not true that administrative expenses cannot be prepetition claims.  Section 503(b) contemplates numerous administrative expenses that arise prepetition.  *See, e.g.,* § 503(b)(9) (value of goods delivered within 20 days before the petition date); § 503(b)(3)(A) (fees of petitioning creditor); § 502(b)(3)(E) (fees of a prepetition custodian); § 503(b)(4) (professional fees of petitioning creditors or prepetition custodians); *see also In re Busetta-Silvia,* 314 B.R. 218 (B.A.P. 10th Cir. 2004) (attorney's fees for prepetition work can qualify as administrative expense entitled to priority).

*Testing in the New § 707(b)*, 79 AM. BANKR. L.J. 231, 273 (2005).  The Court disagrees the canon applies here.  Judge Wedoff in his article talks about chapter 7 debtors taking deductions for hypothetical chapter 13 administrative expenses, not actual chapter 13 debtors taking deductions for actual administrative expenses allowed by the Court.  It makes sense that chapter 7 debtors, who do not have administrative expenses, cannot take deductions for hypothetical chapter 13 expenses because, as Trustee states, one must "be clairvoyant in knowing what and how much the Court may award."  Trustee's Brief, Doc. No. 35, p. 10.

Not only would it be difficult from a practical perspective, but allowing chapter 7 debtors to deduct purely hypothetical administrative expenses could lead to all sorts of shenanigans.  As Trustee again points out, however, chapter 13 trustee fees are an exception:  "The fact that the list [of deductions] only includes one type of administrative expense is logical because the Chapter 13 Trustee fee is the only amount that is statutorily mandated for all cases and is neither negotiated nor controlled by the debtor."  *Id.* at p. 10.  The Court completely agrees with this statement with one major qualification—the list of deductions in the means test includes only one type of *hypothetical* administrative expense.  Unlike any other administrative expenses, including attorney's fees, all chapter 13 debtors have chapter 13 trustee fees, and they are subject to reasonable estimation without much room for manipulation.  It makes sense that only one hypothetical administrative expense is allowed as part of the means test.[17]

The Court disagrees that the canon applies for purposes of the PDI Test in an *actual* chapter 13 case with *actual* administrative expenses that *Debtor* is *required* to pay "as a claim entitled to

---

[17] While not an administrative expense, the means test also contemplates a deduction for cure payments on secured debt in a hypothetical chapter 13 case.  *See* Code § 707(b)(2)(A)(iii)(II).  Like trustee fees, cure payments are known at the time of filing a chapter 7 case and would not require significant clairvoyance to estimate or allow much room for manipulation.

priority under § 507." Code § 1322(b). There is no need to engage in hypotheticals with respect to the Attorney's Fees. Trustee raises no objection to the reasonableness of the fees, and the fees will be an actual allowed administrative expense immediately upon confirmation of the Plan. The Court sees a sharp difference between, on the one hand, a chapter 13 debtor with actual attorney's fees that Debtor must pay under the Plan, which have ostensibly been negotiated (or at least shopped), and are subject to review and allowance under § 330, and, on the other hand, a chapter 7 debtor whose chapter 13 attorney's fees are purely hypothetical and without the benefit of negotiation, shopping, or review under § 330. The means test contemplates a deduction for actual, *i.e.*, allowed, administrative expenses in § 707(b)(2)(A)(iv) while foreclosing any deductions for hypothetical administrative expenses, excepting chapter 13 trustee fees.

The separate deduction for trustee fees in chapter 13 cases may further be explained by the fact that standing chapter 13 trustee fees work differently than other administrative expenses. In fact, standing trustee fees technically may not even be administrative expenses because they are statutorily mandated and not subject to allowance by the Court, even though they are "loosely referred to" as administrative expenses. Drake, Bonapfel, Goodman, *supra*, at § 6:7.[18] Almost all administrative expenses must be allowed after notice and a hearing before payment, *see* Code § 503(a), and entitlement to priority under § 507(a)(2) is conditioned upon allowance under § 503(b). Not so for standing chapter 13 fees, which never come before the Court for allowance but which still enjoy priority through § 1326(b)(2). Further, standing trustee fees really do not accrue until payments are made under the plan, so they remain, for the most part, hypothetical at the time of

---

[18] Use of the term "administrative expense" in § 707(b)(2)(A)(ii)(III) makes this argument harder, but the argument is supported by the separate provisions in § 1326(b) for administrative expenses and standing trustee fees. It could be that the use of the term "administrative expense" in § 707(b)(2)(A)(ii)(III) is a conflation between standing chapter 13 fees and appointed trustees, or just sloppy drafting.

23

confirmation.  But unlike every administrative expense claim that is not known at the time of confirmation, it is certain that trustee fees will arise during the term of the plan, and a reasonably accurate way to estimate them exists.  Thus, the means test allows for a separate deduction of all trustee fees that are likely to arise over the course of a plan, even though they will never be allowed by the Court and remain hypothetical at the time of confirmation.

Even if the separate deduction for the "administrative expense" of chapter 13 trustee fees in the means test creates a small redundancy *vis-à-vis* the deduction for "priority claims," the Court finds any mild redundancy to be the unfortunate result of inartful drafting and the wholesale incorporation of the chapter 7 means test into chapter 13.  The Court is satisfied that its analysis of the term "priority claim," the policies behind the PDI Test and means test, pre-BAPCPA practice, the reasons analyzed above for including a separate deduction for trustee fees, and policy concerns discussed below significantly outweigh any minor redundancy.[19]

Ultimately, the Court discerns no disciplined explanation for why Congress used the term "priority claims" in § 707(b)(2)(A)(iv) other than expedience and inartful drafting.  If Congress intended to exclude the actual administrative expenses of a chapter 13 debtor in § 707(b)(2)(A)(iv), it could have done so explicitly in several different ways, such as a simple parenthetical:  "priority claims (excluding administrative expenses)," or it could have indicated somewhere in the text of BAPCPA or its legislative history that Congress intended to exclude administrative expenses from the scope of "priority claims."  Instead, Congress picked a term commonly understood to include administrative expenses with no indication that the common understanding is wrong.  The Court concludes that "priority claim" as used in § 707(b)(2)(A)(iv) includes actual attorney's fees of a

---

[19] Debtors should not view this redundancy, if it exists, as license to count trustee fees twice when calculating PDI, as such a result would be absurd.  It is perhaps inevitable that in a long list of expenses available for deduction, there may be categories with some overlap, and certain types of claims may fit into more than one category.

chapter 13 debtor allowed as an administrative expense and entitled to priority under § 507(a)(2), and such expenses may be deducted as a reasonably necessary expense when calculating an above-median debtor's PDI.

## C.    <u>Form 122C-2</u>

Having concluded that the Code itself allows the means test deduction, the Court next addresses Form 122C-2. Trustee relies heavily on Form 122C-2, which clearly limits the deduction for priority claims at line 35 to priority claims "that are past due as of the filing date of your bankruptcy case." The limitation to "past due" claims generally excludes attorney's fees and other administrative expenses, and the Committee Notes to Form 122, last updated in 2015, clearly indicate that the deduction for priority claims excludes chapter 13 attorney's fees.[20] Based on its analysis set forth above, the Court disagrees that the deduction is limited to "past due priority debt." Nothing in the language of § 707(b)(2)(A)(iv) creates such a limitation, nor is it clear how the Committee arrived at its conclusion that only past due priority debts are deductible. The limitation may make some sense for chapter 7 debtors because most types of priority claims under § 507 are, by definition, limited to claims that were due as of the petition date, or that have accrued and can be liquidated as of the petition date. Administrative expenses are the notable exception, but chapter 7 debtors generally have no actual administrative expenses, and there is no room in the deduction for hypothetical claims. Thus, the limitation seems mostly correct for chapter 7 cases.[21]

The limitation goes too far for chapter 13 cases, at least for attorney's fees that will be allowed as an administrative expense at confirmation and paid by a debtor through regular plan

---

[20] *See supra* pt. III, p. 6.

[21] The past due limitation does not necessarily preclude all administrative expenses and could preclude some other types of priority claims for debtors running businesses. Would § 503(b)(9) claims of a debtor running a business qualify as a priority debt so long as the invoices on the goods were past due on the petition date? Or is the limitation intended to exclude all administrative expenses whether owed or not as of the petition date? Likewise, would the limitation preclude a deduction for priority employee wage claims earned by an employee as of the petition date but

payments.[22]  By eliminating known, undisputed, and allowed administrative expenses such as attorney's fees, Form 122C-2 ignores the plain language of the Code that allows for a deduction of all priority claims, regardless of when they may be "due."

The Committee theoretically softens the effect of its conclusion by endorsing the pot deduction,[23] and several courts have taken this endorsement to heart. *See, e.g.*, *In re Hemker*, 2015 Bankr. LEXIS 3122.  The Court, however, declines to ignore its analysis of § 707(b)(2)(A)(iv) in reliance on the pot deduction and prefers the approach found in *In re Williams*, 394 B.R. 550.  The *Williams* court determined the term "priority claims" does include attorney's fees and allowed the debtor to calculate PDI with attorney's fees deducted, even though the official form omits the deduction.  *Id.* at 563-64.  The Court prefers this approach because it is based on the plain language of the Code and because of potential difficulties of deferring to the pot deduction discussed below.

One difficulty with the pot deduction is whether it is viable under the language of § 1325(b)(1)(B), which requires that all PDI received during the ACP be "applied to make payments to unsecured creditors under the plan."  The term "creditor" is defined in the Code as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . ."  Code § 101(10).  "Thus, by definition, this term would only include creditors holding prepetition claims."  *In re Williams*, 394 B.R. at 563.  This interpretation makes the Court less inclined to follow cases like *Puetz* and the Committee Notes that seem to treat the pot deduction as a catchall for any post-petition claim or expense.  *See In re Puetz*, 370 B.R. at 391-92.  In this way, the Committee Notes are contradictory by holding steadfastly to a prepetition

---

not yet "due" because the debtor filed the petition before pay day?  While these examples may be rare in practice, they highlight the difficulty of the artificial limitation to "past due" amounts.

[22]  The Court's ruling is limited to attorney's fees allowed at or prior to confirmation and paid with a debtor's income through regular plan payments.

[23] *See supra* pt. IV.A., p. 11.

limitation appearing nowhere in § 707(b)(2)(A)(iv) while simultaneously endorsing the pot deduction despite a clear textual basis in the Code limiting "unsecured creditors" to prepetition claims.

Another difficulty with the pot deduction is the issue of double counting.  The Court agrees with the cases that have interpreted "unsecured creditors" to be limited to "nonpriority unsecured creditors" because allowing double counting would be absurd.  Further, some have found that by adding the term "unsecured creditors" in § 1325(b)(1)(B) with BAPCPA, Congress intended to exclude priority claims.  *In re Williams*, 394 B.R. at 565; Drake, Bonapfel, Goodman, *supra* at § 8:3.  The issue of double counting exists for priority claims regardless of whether attorney's fees are included in the means test deduction, and including attorney's fees in the means test deduction mitigates the need to interpret "unsecured creditors" to include some types of priority claims but not others.  The Court believes the better approach is to interpret the language of § 707(b)(2)(A)(iv) as written and allow a deduction for "all priority claims" "as of the effective date of the plan" regardless of the omission on Form 122C-2.

While the Court is hesitant to find that the form is simply wrong, it is not the first court to do so.  *See In re William*s, 394 B.R. at 563-64 (finding that § 707(b)(2)(A)(iv) allows for deduction of attorney's fees even though the form omits such a deduction); *In re Hemker*, 2015 Bankr. LEXIS 3122 at *7 (characterizing the lack of deduction for attorney's fees of a chapter 13 debtor on the official form as an "unfortunate omission").  Other Courts have found that Official Form 122C-1, which calculates a debtor's current monthly income, does not comply with the Code.  *See, e.g., In re Gonzalez*, 597 B.R. 133, 141 (Bankr. D. Colo. 2018) ("Courts and commentators alike have called for revisions to the Official Form so that it better aligns with the Code, but no change has occurred, even though the Judicial Conference revised this form in 2015" and citing cases

concluding the form is wrong).  Bankruptcy Rule 9009 requires that "the forms shall be construed to be consistent with these rules and the Code."  The Court will not bend its construction of the Code to match the form.  "When an Official Bankruptcy Form conflicts with the Code, the Code always wins."  *In re Gonzalez*, 597 B.R. 133, 141 (Bankr. D. Colo. 2018) (citing *Drummond v. Wiegand (In re Wiegand)*, 386 B.R. 238, 242 (9th Cir. B.A.P. 2008)).  Here, the Code wins.  The Court finds that the absence of a deduction for allowed attorney's fees on Form 122C-2 does not preclude Debtor from deducting his Attorney's Fees to calculate PDI.

### D.  Pot Deduction Not Foreclosed Except for Double Counting

Because the Court finds that the Attorney's Fees may be included in the deduction for "priority claims" pursuant to § 707(b)(2)(A)(iv), it need not determine whether, as an alternative, Debtor may use the pot deduction.  While, as discussed above, the Court recognizes some difficulties in the pot deduction, it is not ruling one way or another on whether it is available to any debtor,[24] with one important caveat:  the pot deduction may not be used to double count attorney's fees or any other claim deducted in the PDI calculation.  Priority claims, including attorney's fees, may be deducted "once, no more, no less."  *In re Williams*, 394 B.R. at 564 (quoting *In re Echemann*, 378 B.R. at 182 n.7).  Debtor seeks no such double counting.

### E.  Policy Arguments

Trustee offers several policy arguments in favor of her position, most of which, in the Court's view, compel a different result.  Trustee argues that allowing above-median debtors to take

---

[24] While the Court declines to reach any conclusion on the issue, commentators have suggested below-median debtors should be able to deduct attorney's fees and other priority claims as reasonably necessary expenses, *see* Drake, Bonapfel, Goodman, *supra* at § 8:3, which also mitigates the need to interpret "unsecured creditors" in a way that both includes and excludes priority claims.  Such an interpretation does not solve all issues, however, such as the deductibility of unknown or anticipated but not allowed administrative expenses at confirmation.  The flexible PDI Test adopted in *Hamilton v. Lanning*, 560 U.S. 505 (2010) might capture some of these expenses if "known or virtually certain at the time of confirmation," but *Hamilton* is not a panacea as it is intended to apply only to "unusual cases."  *Id.* at 519.  The Court agrees with Trustee that there is nothing unusual about attorney's fees.

a deduction for attorney's fees leads to inequitable treatment between above-median debtors and below-median debtors. The basis of her argument is that some cases, such as *Hemker*, justify a deduction of attorney's fees for above-median debtors, at least in part, on the notion that the means test is designed to calculate all a debtor can afford to pay. If attorney's fees are not deducted in that calculation, then the debtor must not have any means to pay the attorney's fees, which creates feasibility issues. Trustee argues that this reasoning means that below-median debtors and above-median debtors with negative disposable income will not be able to confirm feasible plans if they hire attorneys. The Court disagrees that above-median debtors are getting an unfair benefit.

First, allowing above-median debtors to deduct attorney's fees pursuant to § 707(b)(2)(A)(iv) does not preclude below-median debtors from deducting their attorney's fees when calculating PDI, they just do not have the ability to do so under § 707(b)(2)(A)(iv) because that section does not apply to them. Indeed, the only decisions the Court has found on the issue allow below-median debtors to deduct their attorney's fees in the PDI Test, albeit some allow it under the pot deduction. *See, In re Williams,* 394 B.R. at 564; *In re Puetz*, 370 B.R. at 391-92; *In re Echemann*, 378 B.R. at 182; and *In re Hemker* at *8. Not allowing above-median debtors to take a similar deduction leads to inequitable treatment, not the other way around.

Second, above-median debtors with negative PDI do get to deduct their attorney's fees under the Court's ruling, even though they may not need the benefit of the deduction because they have no PDI that must be paid to unsecured creditors.

Third, the Court does not base its ruling on the premise that the means test is coextensive with feasibility. Its ruling is based on the language of the Code and the pervasive Code policy of giving priority to attorney's fees and other administrative expenses. While the means test may have been designed to ensure above-median debtors pay unsecured creditors "the maximum they

29

can afford," it often does a poor job, which "is the inevitable result of a standardized formula like the means test." *Ransom*, 562 U.S. at 78. Deficiencies notwithstanding, if the purpose of the means test is "best achieved by interpreting [it] . . . to reflect a debtor's ability to afford repayment," then allowing deductions for actual priority claims such as attorney's fees best achieves that goal.

Trustee also argues that allowing a deduction for attorney's fees will allow manipulation when negotiating attorney's fees for above-median cases. The Court appreciates Trustee's point: if a deduction is allowed, then above-median debtors will have no incentive to negotiate lower counsel fees so long as the fee is less than the resulting unsecured claim pool in the absence of the deduction. It's a wash from an above-median debtor's perspective because the funds will be paid either to counsel or to unsecured credits. The Court, however, does not share Trustee's concern. First, the Court does not believe that most debtors when negotiating fees with counsel appreciate the intricacies of the PDI Test and how it affects payments in a chapter 13 case. The Court has trouble believing that chapter 13 attorneys will be able to convince many debtors to pay significantly higher fees than they otherwise would be willing to pay. But even if they could, this type of manipulation is exactly what § 330 is designed to prevent. If Trustee sees an increase in counsel fees in the wake of this decision, this Court stands ready to address any suspected manipulation.

The Court is more concerned with the potential message sent to above-median debtors by Trustee's position: don't hire an attorney. Chapter 13 (indeed every chapter of the Code) works better for all parties, trustees and creditors included, when debtors are represented by competent counsel. The Code's priority scheme recognizes this fact by placing administrative expenses, including attorney's fees, at or near the top of the priority list in every chapter. *See, e.g.,* §§ 507, 726, and 1129(a)(9)(A). Chapter 13 is no different. Attorney's fees (to the extent allowed) must

30

be paid under a chapter 13 plan and before nearly all other claims.  *See* §§ 1322(a)(2) and 1326(b)(1).  Trustee's position is contrary to this pervasive Code policy and singles out attorney's fees as the only common priority claim in chapter 13 essentially placed on equal footing with general unsecured creditors.  It is illogical to require above-median debtors to honor the priority of attorney's fees through actual payment while simultaneously ignoring that priority when calculating the minimum payment to nonpriority unsecured creditors.  Nothing in the plain language of BAPCPA or its legislative history suggests a goal of making it harder for above-median debtors to hire counsel.  The Court will not extrapolate such a goal through the oblique devices of *expressio unius* and artificial limitations on commonly understood terms.

The ultimate policy question boils down to this:  who should foot the bill for above-median debtors' attorney's fees—debtors or unsecured creditors?  Trustee's position collects from the debtors.  Debtor's position sends the bill to unsecured creditors.  If the primary goal of the means test is to ensure that debtors are channeled into chapter 13 cases instead of chapter 7 for the benefit of unsecured creditors, then it makes sense for unsecured creditors to pay the extra freight that comes with a chapter 13 case meant to serve them.  The better policy is the one that eliminates barriers to hiring counsel, not raises them.  Trustee's position erects such a barrier.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Trustee's objection to confirmation is overruled and a separate order confirming Debtor's Plan will enter once Debtor amends his Form 122C-2 and the Plan to account for the correct amount of priority claims as indicated in footnote 6 of this opinion.

END OF DOCUMENT